IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Mark Mosakowski,<br><br>   Petitioner,<br><br>v.<br><br>Charles L. Ryan, Attorney General of the State of Arizona,<br><br>   Respondents. | No. CV 15-02010-PHX-GMS (DMF)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE G. MURRAY SNOW, UNITED STATES DISTRICT JUDGE:**

  Petitioner Paul Mark Mosakowski ("Petitioner" or "Mosakowski"), who is confined in the Arizona State Prison Complex-Douglas, filed a *pro se* Petition for Writ of Habeas Corpus ("Petition") on October 7, 2015 (Doc. 1). Petitioner was convicted in the Maricopa County Superior Court, case #'s 2011-139097, 2012-009010, 2012-009011, and 2012-009012, of robbery and was sentenced to a 20-year aggregate term of imprisonment followed by probation. Petitioner names Charles L. Ryan as Respondent and the Arizona Attorney General as an Additional Respondent. On October 19, 2015, this Court ordered Respondents to answer the Petition, allowing a limited answer (Doc. 4). Respondents filed a limited answer (Doc. 14), and Petitioner filed a reply (Doc. 15). As explained below, the Court recommends that the Petition be denied and dismissed with prejudice.

/ / /

**I.     BACKGROUND**

    **A.     Proceedings Leading to Convictions and Sentences**

Petitioner was charged in four cases with twenty five separate robberies, many of which involved Petitioner's use of a real or toy gun and were charged as armed robberies (Exhibit P; Doc. 14-1 at p. 87-99)[1],[2]. At an on the record settlement conference (Exhibit U; Doc. 14-1 at p. 145-171), the judge cautioned Petitioner that if he went to trial and lost, there was a significant risk of consecutive incarceration sentences so numerous and long that he could spend the rest of his life in prison (Exhibit U; Doc. 14-1 at p. 149-153). The judge said, "I have to explain to you the good and the bad. I have to explain to you all the possibilities and all the [parameters] and so unfortunately that could be, you know, a life sentence basically if everything gets stacked" (Exhibit U; Doc. 14-1 at p. 153).

At the settlement conference, Petitioner brought to the judge and counsel's attention his early confessions to and cooperation with law enforcement. The judge discussed with counsel following up with the detective about whether or not the detective had promised concurrent sentences in exchange for Petitioner's admissions (Exhibit U; Doc. 14-1 at p. 145-171), but the judge also made clear that "at the end of the day, the County Attorney" has the power to determine the charges and any plea offer, not the detective (Exhibit U; Doc. 14-1 at p. 152). "So the detective or sergeant doesn't have the authority [to promise consecutive time, the prosecutors] do" (*Id.*). This was echoed by defense counsel (*Id.*). Petitioner also said about his confession and cooperation, "I think a lot of it was to get it off my mind because I'm not like that" (Exhibit U; Doc. 14-1 at p. 165-166).

After the settlement conference, Petitioner accepted plea agreements covering the four cases (Exhibits J, K, L, M; Doc. 14-1 at p. 44-48, p. 49-53, p. 54-59, p. 60-64). In

---

[1] The referenced alphabetical exhibits were submitted with Respondents' Limited Answer, Doc. 14. The document and page references herein are to this Court's electronic record.

[2] In Arizona, the factual basis for a no-contest plea may be ascertained from the record including presentence reports, preliminary hearing reports, admissions of the defendant, and from other sources. *State v. McVay*, 641 P.2d 857, 861 (Ariz. 1982).

1  case # CR2012-009010, the stipulated sentences regarding counts one and three stated
2  that the sentences of not less than 10 years but not more than 12, 5 years would "run
3  consecutively to each other for a term of not less than 20 years but not more than 25
4  years" and, likewise, for case # CR2012-009011, the stipulated sentences regarding
5  counts one and two stated that the sentences of not less than 10 years but not more than
6  12, 5 years would "run consecutively to each other for a term of not less than 20 years but
7  not more than 25 years" (Exhibit K, L; Doc. 14-1 at p. 50, p. 55).

8  At the change of plea hearing (consolidating all four cases) and before Petitioner
9  plead guilty, the court summarized that with the various consecutive and concurrent
10 sentences Petitioner was receiving under the combined plea agreements, he would be
11 "going to go to prison between 20 and 25 years" and would be on probation on several
12 charges upon his release from incarceration (Exhibit V; Doc. 14-2 at p. 21).  Again, the
13 Court summarized, "Some [sentences] run concurrently, some run consecutively, but it's
14 a total of 20 to 25 years in prison followed by a supervised probation.  Is that your
15 understanding of all of these pleas, sir" (*Id.*)  Petitioner replied, "Yes, your honor" (*Id.*)

16 Also before any guilty pleas at the change of plea hearing, the court asked if
17 Petitioner had read each of the plea agreements thoroughly and "agree[d] with the
18 contents of all four plea agreements?" to which Petitioner answered "Yes, Your Honor"
19 (Exhibit V; Doc. 14-2 at p. 11-12).  Petitioner also answered that the plea agreements
20 contained his entire agreements with the state, that he was not coerced or threatened into
21 pleading guilty, and he was not made promises beyond those in the plea agreement
22 (Exhibit V; Doc. 14-2 at p. 13).  The Court accepted the plea agreements (Exhibits C, D,
23 E, F; Doc. 14-1 at p. 9-11, p. 12-15, p. 16-19, p. 20-23).

24 Between the change of plea and sentencing on the plea agreements, Petitioner,
25 through counsel, moved to withdraw from the plea agreements, claiming they were
26 unduly harsh, that he would like to negotiate a more lenient offer, and that Petitioner's
27 mother passed away which changed the way Petitioner felt about the plea offer (Exhibit
28 N; Doc. 14-1 at p. 65-77).  The motion to withdraw was opposed and denied (Exhibits O,

Q, R, S, T, W; Doc. 14-1 at p. 78-85, p. 115-121, p. 122-129, p. 130-137, p. 138-144, Doc. 14-2 at p. 45-46).

Pursuant to the plea agreements, Petitioner was sentenced to an aggregated total of twenty years incarceration (after taking concurrent sentences into account) as well as probation to follow the incarceration; in addition, seven charges were dismissed (Doc. 1 at p. 2; Q, R, S, T, W; Doc. 14-1 at p. 115-121, p. 122-129, p. 130-137, p. 138-144, Doc. 14-2 at p. 43-76).[3] The sentence imposed was the lowest possible imprisonment under the plea agreements (Exhibits J, K, L, M; Doc. 14-1 at p. 44-48, p. 49-53, p. 54-59, p. 60-64).

### B.     PCR Proceedings

#### 1.     First PCR Proceedings

On April 26, 2013, Petitioner filed a timely notice of post-conviction relief ("PCR") (Ex. X; Doc. 14-2 at p. 77-81). Petitioner filed a notice to amend his PCR notice to include all four of his case numbers, which was granted (Exhibits Y, AA; Doc. 14-2 at p. 82-108, p. 112-114). Because Petitioner also sought to represent himself in PCR proceedings, the Office of the Legal Advocate filed a motion to determine counsel (Exhibits Y, Z; Doc. 14-2 at p. 82-108, p. 109-111). The court denied Petitioner's request to represent himself and appointed the Office of the Legal Advocate to represent Petitioner (Ex. AA; Doc. 14-2 at p. 112-114).

On July 23, 2014, the Office of the Legal Advocate filed a notice of completion of post-conviction review stating that after reviewing the materials in the case, counsel was "unable to raise any issues on behalf of [Petitioner] in post-conviction relief proceedings" (Exhibit BB; Doc. 14-2 at p. 115-118). The court ordered counsel to send case materials to Petitioner, and set a deadline for Petitioner to file a pro se PCR petition (Exhibit.CC; Doc. 14-2 at p. 119-123).

On September 8, 2014, Petitioner filed a timely pro se PCR petition supported by his own affidavit and the transcript of the settlement conference (Exhibits DD, EE; Doc.

---

[3] There were also monetary penalties, such as restitution (*Id.*).

- 4 -

14-2 at p. 124-168, p. 169-174).  Citing *Strickland v. Washington*, 466 U.S. 668 (1984), and *Missouri v. Frye*, 132 S. Ct. 1399 (2012), Petitioner claimed that his counsel had been ineffective for failing to investigate "the relevant facts surrounding [Petitioner's] allegation of promised leniency" by the detective and asserted that "there is a reasonable likelihood that the outcome of [Petitioner's] sentencing and plea negotiation process would have been different if [defense counsel] had investigated [Petitioner's] claim" that the police "promised concurrent sentences in all cause numbers in exchange for his admissions of guilt" (*Id.*).

The state responded in opposition and Petitioner replied (Exhibits FF, GG; Doc. 14-2 at p. 175-189, p. 190-195).  On January 6, 2015, the court denied relief (Exhibit HH; Doc. 14-2 at p. 196-199).  The court noted that the record did "not show there was ever promise of leniency in the form of concurrent sentences by the detective who interviewed Petitioner" (Exhibit HH; Doc. 14-2 at p. 198).  While the trial court ruled that the issue was waived by Petitioner in his guilty plea, the trial court addressed the ineffective assistance of counsel claim substantively:

> Petitioner has failed to show ineffective assistance of counsel pursuant to *Strickland*.  Petitioner raised the issue regarding his discussions about his cases with the detective in the settlement conference.  The prosecutor acknowledged that he was unaware of any discussions.  However, even upon hearing about it during the settlement conference, the prosecutor did not change the offer.  His intent was for [Petitioner] to serve 20-25 years in prison followed by probation for the approximately twenty-eight felonies he was charged within four cases.  Petitioner's attorney was not ineffective.  Moreover, case law is clear that "… to state a colorable claim, the allegation that a petitioner would not have pleaded guilty but for counsel's deficient performance must be accompanied by an allegation of specific facts which would allow a court to meaningfully assess why that deficiency was material to the plea decision."  Here there has been [no] such showing, and the record is clear that Petitioner was facing decades longer in prison had he rejected the plea.
>
> The Court also notes that in his Motion to Withdraw from Plea Agreement dated February 26, 2013 Petitioner did not argue that he was to receive concurrent sentences based on some alleged discussions with the detective.

> Rather, he cites that he believed the plea was too harsh and that his mother had passed away while he was awaiting sentencing and that changed his view of the plea offer. Neither of these arguments rose to a finding of manifest injustice, and the Court denied his motion. Although ineffective assistance of counsel could not be raised at that time, he failed to argue that he believed he should receive concurrent sentences based on alleged discussions with the detective.
>
> Finally, a review of the record reveals that the defendant knowingly, intelligently and voluntarily entered the plea agreements in these four cases. During the plea colloquy Petitioner acknowledged that he discussed the terms of the pleas with his attorney, his attorney answered all his questions about the pleas, and that pleading guilty in each case was what he chose to do. [The incarceration sentence under the plea agreements called for] a total range of 20-25 years in prison, and these terms were covered with Petitioner prior to the entry of the pleas.

(Exhibit HH; Doc. 14-2 at p. 198-199)  (citations omitted).

Petitioner did not file a petition for review with the Arizona Court of Appeals (Doc. 1 at p. 5).

### 2.     Second PCR Proceedings

On April 13, 2015, Petitioner wrote a letter to the court requesting concurrent sentences (Exhibit II; Doc. 14-2 at p. 200-208).  After reiterating his account of the detective promises as he had in the first PCR proceeding, Petitioner claimed that when he told his attorney he was not comfortable signing the plea agreements, "[h]e responding by saying 'Just sign it and when you get to a facility, file a rule 32 (post conviction relief) motion to have all the charges run concurrent and I guarantee you the court will grant it" (Exhibit II; Doc. 14-2 at p. 207).

The court treated the letter as a successive PCR petition, and dismissed it (Ex. JJ; Doc. 14-2 at p. 209-212). The court held that Petitioner could not raise ineffective assistance of counsel or other constitutional claims "because an untimely or successive notice may only raise claims pursuant to Rule 32.1(d), (e), (f), or (h).  *See* Ariz. R. Crim. P. 32.4(a).  The Rule 32.1(a) claims [Petitioner] has asserted were required to be raised in a timely Notice of Post-Conviction Relief.  *See id.*" (Ex. JJ; Doc. 14-2 at p. 211).

Petitioner did petition the Arizona Court of Appeals for review of the trial court's denial and dismissal of his second PCR proceedings (Doc. 1 at p. 5).

## II. PETITIONER'S HABEAS CLAIMS

In his Petition, Petitioner names Charles L. Ryan as Respondent and the Arizona Attorney General as an Additional Respondent. Petitioner raises three grounds for relief. In Ground One, Petitioner alleges that the charges against him and the indictment violated the Fifth Amendment and the double jeopardy clause because they were multiplicitous. In Ground Two, Petitioner alleges that his due process rights were violated because was subjected to prosecutorial misconduct when "promises" that were made to him by the police department were not kept and were not disclosed to the judge. In Ground Three, Petitioner alleges that his Sixth Amendment rights were violated because he received ineffective assistance of counsel when his counsel misadvised him about his plea.

## III. LEGAL ANALYIS

### A. Exhaustion/Procedural Bar

A state prisoner must properly exhaust all state court remedies before this Court can grant an application for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1), (c); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Petitioner was convicted and sentenced pursuant to a plea agreement. Therefore, his avenue of review in the Arizona courts was through a "Rule 32 of right proceeding," rather than through a direct appeal. *See* Ariz. R. Crim. P. 32.1. Whether the conviction is from a guilty plea or a trial result, Arizona prisoners properly exhaust state remedies by fairly presenting claims to the Arizona Court of Appeals in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 843-45 (1999); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994).[4]

---

[4] "To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his or her conviction in a petition for post-conviction relief pursuant to Rule 32[,]" *Roettgen v. Copeland,* 33 F.3d 36, 38 (9th Cir. 1994), and then present his claims to the Arizona Court of Appeals. *See Castillo v. McFadden*, 399 F.3d 993, 998 & n.3 (9th Cir. 2005).

To be fairly presented, a claim must include a statement of the operative facts and the specific federal legal theory. *Baldwin v. Reese*, 541 U.S. 27, 32-33 (2004); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Duncan*, 513 U.S. at 365-66.

A claim can also be subject to an express or implied procedural bar. *Robinson v. Schriro*, 595 F.3d 1086, 1100 (9th Cir. 2010). An express procedural bar exists if the state court denies or dismisses a claim based on a procedural bar "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989). *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (Arizona's "Rule 32.2(a)(3) determinations are independent of federal law because they do not depend upon a federal constitutional ruling on the merits"); *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) ("adequate" grounds exist when a state strictly or regularly follows its procedural rule). *See also Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Robinson*, 595 F.3d at 1100. An implied procedural bar exists if a claim was not fairly presented in state court and no state remedies remain available to the petitioner. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989); *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *Poland v. Stewart*, 169 F.3d 573, 586 (9th Cir. 1999); *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

In Arizona, claims that have not been previously presented to the state courts, through either direct appeal or collateral review, are generally barred from federal review because an attempt to return to state court to present them is futile unless the claims fit in a narrow category of claims for which a successive petition for post-conviction relief is permitted. *See* Ariz. R. Crim. P. 32.1(d)–(h), 32.2(a) & (b) (stating successive petitions are limited to claims of being held in custody beyond sentence expiration, newly-discovered material facts, requests for delayed appeal, significant change in the law retroactively applicable that would probably overturn conviction or sentence, and actual innocence); *Spreitz v. Ryan*, 617 F. Supp. 2d 887, 899–900 (D. Ariz. 2009) (describing Arizona's preclusion rule).

In addition to preclusion under Rule 32.2, Arizona has a time bar requiring that a notice of post-conviction relief, in a non-capital case, be filed within 90 days after the

- 8 -

entry of judgment and sentence or within 30 days "after the issuance of the final order and mandate in the direct appeal, whichever is the later." See Ariz. R. Crim. P. 32.4(a); Moreno v. Gonzalez, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing the untimeliness bar under Rule 32.4(a) as a basis for dismissing an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).  As with the preclusion bar, an untimely notice post-conviction relief is only permitted for a narrow category of claims—the same narrow category of claims that are exempted from the preclusion bar.  *See* Ariz. R. Crim. P. 32.1(d)–(h), 32.4(a).  If a claim is filed outside time limits or does not fall within one of the exceptions in Rule 32, the successive notice is subject to summary dismissal.  *See, e.g., State v. Diaz*, 269 P.3d 717, 719–21 (App. 2012); *State v. Rosario*, 987 P.2d 226, 228 (App. 1999); *State v. Jones*, 897 P.2d 734, 735–36 (App. 1995).

Because Arizona's preclusion rule (Rule 32.2) and time-bar rule (Rule 32.4) are both "independent" (it does not rely upon a federal constitutional ruling on the merits, *Stewart v. Smith*, 536 U.S. 856, 860 (2002)) and "adequate" (it is strictly or regularly followed, *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)), when specifically applied to a claim by an Arizona court or when precluding a return to state court to exhaust a claim, they procedurally bar subsequent review of the merits of that claim by a federal habeas court.  *See Stewart v. Smith*, 536 U.S. 856, 860 (2002) (finding determinations made under Arizona's procedural default rule are "independent" of federal law); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) (finding that unexhausted claims were procedurally defaulted because petitioner was "now time-barred under Arizona law from going back to state court"); *Ortiz v. Stewart*, 149 F.3d 923, 931–32 (9th Cir. 1998) (rejecting the argument that Arizona courts have not "strictly or regularly followed" Rule 32); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (en banc) (rejecting the assertion that Arizona courts' application of procedural default rules had been "unpredictable and irregular"); *State v. Mata*, 916 P.2d 1035, 1050–52 (Ariz. 1996) (noting that waiver and preclusion rules are strictly applied in post-conviction proceedings).

This Court can review a procedurally defaulted claim if the petitioner can

demonstrate either cause for the default and actual prejudice to excuse the default, or a miscarriage of justice. 28 U.S.C. § 2254(c)(2)(B); *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *States v. Frady*, 456 U.S. 152, 167-68 (1982).

**1. All grounds of the Petition are unexhausted and procedurally defaulted.**

Petitioner did not timely or properly present his claims in Petitions grounds 1 and 2 to any Arizona court.[5] Regarding ground 3, a similar ground was raised in Petitioner's first and timely PCR petition, but review of the denial of the PCR petition was not sought at the Arizona Court of Appeals. It is too late and now improper under Arizona law to raise any of the Petition grounds at any level in the Arizona courts. All of Petitioner's claims are therefore unexhausted and defaulted because of a procedural bar.

Procedural defaults are excusable only if the petitioner demonstrates either (1) cause for the defaults and prejudice resulting from them, or (2) a fundamental miscarriage of justice by showing that he is actually innocent. *Coleman*, 501 U.S. at 750; *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011). As discussed below, Petitioner cannot make either showing. Consequently, his claims are inexcusably defaulted and should be dismissed with prejudice.

**2. Petitioner does not present an excuse for his defaults under the cause-and-prejudice framework.**

The first way a petitioner may excuse a default is to show cause and prejudice. This test is "conjunctive"; a petitioner must show both cause and prejudice to excuse a default. *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982). To establish "cause," a petitioner must demonstrate that "some objective factor external to the defense impeded [petitioner]'s efforts to comply with the State's procedural rules." *Coleman*, 501 U.S. at 753 (internal quotation marks omitted). To show "prejudice," a petitioner must

---

[5] Even if the Court were to construe ground 2 as having been raised as part of the first PCR petition, this ground would be unexhausted nevertheless because review was not sought at the Arizona Court of Appeals of the denial of the first PCR petition.

- 10 -

demonstrate that the underlying alleged constitutional violation worked to the prisoner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Stokley v. Ryan*, 705 F.3d 401, 403 (9th Cir. 2012).

Petitioner has not met his burden of demonstrating, cause and prejudice. Petitioner has not identified any "objective factor external to the defense" that prevented him from presenting his claims to the state courts. *Coleman*, 501 U.S. at 753.[6] Petitioner asserts that he did not present ground one to the Arizona courts because he "signed a plea deal" (Doc. 1 at p. 6), but the plea agreement did not preclude Petitioner from raising this ground in his first and timely PCR petition. *See* Ariz. R. Crim. P. 32.1(a).

As Petitioner's reason that he did not present grounds two and three to the Arizona Court of Appeals, Petitioner asserts the following as the reason: "newly discovered evidence" in the form of the "audio cd" (Doc. 1 at p. 7- 8). For newly discovered evidence to excuse a procedural default, Petitioner would need to demonstrate not only that the evidence is new and could not have been discovered with the exercise of due diligence, but that Petitioner is actually innocent.

**3. Petitioner does not present new evidence or show that he is actually innocent.**

The miscarriage of justice exception to procedural default "is limited to those *extraordinary* cases where the petitioner asserts his [actual] innocence and establishes that the court cannot have confidence in the contrary finding of guilt." *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008) (emphasis in original); *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To pass through the actual innocence/*Schlup* gateway, a petitioner must establish his or her factual innocence of the crime and not mere legal insufficiency. *See Bousley v. U.S.*, 523 U.S. 614, 623 (1998); *Jaramillo v. Stewart*, 340 F.3d 877, 882–

---

[6] Petitioner has not asserted that *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), is an avenue for excuse of the procedural default, nor can he does so persuasively. The ineffective assistance of counsel claim was presented to the trial court in the first PCR proceeding, the trial court applied the *Strickland* standard to the claim, and in a well-reasoned decision found the ineffective assistance of counsel claim lacked merit.

- 11 -

83 (9th Cir. 2003). To prove a "fundamental miscarriage of justice," a prisoner must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). This standard "is demanding and permits review only in the extraordinary case," *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks omitted), and requires the petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," *Schlup*, 513 U.S. at 324 (emphasis added); *accord Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011).

Petitioner has not even asserted his innocence, nor has he presented any new evidence here, much less evidence so powerful "that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. This evidence, even if it were "new", does not show *Schlup* actual innocence; rather, the evidence is a recording which includes multiple confessions by Petitioner to the crimes of conviction and other crimes. Further, Petitioner asserts that his trial counsel gave ineffective advice "concerning [Petitioner's] plea knowing that the audio cd was real and is an epic violation of my Sixth Amendment" rights (Doc. 1 at p. 8). Thus, Petitioner points out that the audio cd existed at the time of his underlying case and, thus, is not new evidence.

### 4. The Petition is Unexhausted and Procedurally Barred Without Excuse

Petitioner did not exhaust any of the claims in his habeas petition and procedural bars now exist to prevent him from doing so. To meet the exhaustion requirement, Petitioner needed to fairly present his claims to the Arizona Court of Appeals by providing the facts underlying his claim and the federal basis of those claims. Petitioner did not do so and, therefore, his claims are not exhausted. In addition, Petitioner's claims are now subject to procedural bars because his claims were not fairly presented in state court and no state remedies remain available to him. Petitioner has not demonstrated either cause for the default and actual prejudice to excuse the default, or a miscarriage of justice. Accordingly, the Petition should be dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED that** the Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

**IT IS FURTHER RECOMMENDED that** a Certificate of Appealability be denied because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapi*a, 328 F.3d 1114, 1121 (9th Cir.2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

Dated this 9th day of January, 2017.

Honorable Deborah M. Fine
United States Magistrate Judge